## Case No. 20-20574

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Steven F. Hotze, M.D.; Wendell Champion; Honorable Steve Toth; Sharon Hemphill,

*Plaintiffs-Appellants*

v.

Chris Hollins, in his official capacity as Harris County clerk,

*Defendant-Appellee*

Andrea Chilton Greer; Yekaterina Snezhkova; Joy Davis-Harasemay; Diana Untermeyer; Michelle Covard; Karen Vidor; Malkia Hutchinson-Arvizu; Anton Montano; Helen Shelton; Elizabeh Furler; Alan Mauk; Jenn Rainey; Brian Singh; Mary Bacon; Kimberly Phipps-Nichol; Nyguen Griggs; Nelson Vanegas; Jessica Goodspero; Amy Ashmore; Richard Frankel; Elaine Frankel; Ryan Frankel; Celia Veselka; Sergio Aldana; Russell "Rusty" Hardin; Douglas Moll; Carey Jordan; Christina Massara; Jerelyn M. Gooden; Stanley G. Schneider; Mary Currie; Carlton Currie, Jr.; Jekaya Simmons; Daniel Coleman; David Hobbs; Bettye Hobbs,

*Intervenor Defendants-Appellees*

Appeal from the U.S. District Court for the
Southern District of Texas, Houston Division (No. 4:20-CV-3709)

## BRIEF OF APPELLANTS

Andrew L. Schlafly
939 Old Chester Rd.
Far Hills, New Jersey 07931
908-719-8608
908-934-9207 (fax)

Jared Woodfill
Woodfill Law Firm, P.C.
3 Riverway Suite 750
Houston, Texas 77056
713-751-3080

*Attorneys for Appellants-Plaintiffs*

## CERTIFICATE OF INTERESTED PARTIES

Pursuant to 5TH CIR. R. 28.2.1, the undersigned counsel certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualifications or recusal.

**Appellants**: STEVEN HOTZE, M.D., WENDELL CHAMPION, HON. STEVE TOTH, AND SHARON HEMPHILL, using undersigned counsel Andrew L. Schlafly, 939 Old Chester Rd., Far Hills, NJ, and Jared Woodfill, Woodfill Law Firm, P.C., 3 Riverway, Suite 750, Houston, TX.

**Appellee:** CHRIS HOLLINS, in his official capacity as Harris County Clerk, represented by Richard Warren Mithoff, Jr., of Mithoff Law Firm, 500 Dallas St., Suite 3450, Houston, TX.

**Intervenors and Movants to Intervene below**: Texas Coalition of Black Democrats, represented by Carvana Yvonne Cloud of The Cloud Law Firm, 8226 Antoine Drive, Houston TX.

S. Shawn Stephens, Jaime Lyn and Michele Royer, Glenda Lee Greene, Jaime Lyn Watson, Jerelyn M Gooden, represented by Charles Stein Siegel of Waters & Kraus, LLP, 3141 Hood St., Suite 700, Dallas TX, and Kenneth Royce Barrett of KBR Law, 3740 Greenbriar, Houston, TX.

Elizabeth Hernandez for Congress represented by S Nasim Ahmad, The Ahmad Law Firm, The Woodlands, TX.

Texas State Conference of NAACP Branches, Common Cause Texas, Andrea Chilton Greer, Yekaterina Snezhkova, represented by Lindsey Beth Cohan, Dechert LLP, Austin, TX.

League of Women Voters of Texas, Joy Davis-Harasemay, Diana Untermeyer, Michelle Colvard, Keren Vidor, Malkia Hutchinson-Arvizu, Anton Montano, Helen Anice Shelton, Elizabeth Furler, represented by Andrew Ivan Segura, ACLU of Texas, Houston, TX.

David L. Hobbs and Bettye Hobbs, represented by David L. Hobbs of Fleming Nolen and Jez LLP, 2800 Post Oak Blvd., Ste 4000, Houston, TX.

MJ for Texas, DSCC, DCCC, Mary Currie, Carlton Currie,Jr., Jekaya Simmons, Daniel Coleman, represented by Daniel Osher, Marc Elias, and Skyler Michelle Howton, of Perkins Coie LLP in Washington, D.C., and Dallas TX.

Richard, Elaine, and Ryan Frankel, Celia Veselka, Sergio Aldana, Russell "Rusty" Hardin, Douglas Moll, Carey Jordan, Alan Mauk, Jenn Rainey, Brian Singh, Mary Bacon, Kimberly Phipps-Nichol, Nyguen Griggs, Nelson Vanegas, Jessica Goodspero, Amy Ashmore, Christina Massara, represented by Larry Richard Veselka of Smyser Kaplan et al, Houston TX.

Stanley G. Schneider, represented by himself of Schneider and McKinney P C, Houston, TX.


Dated: January 11, 2021                          s/ Andrew L. Schlafly____
                                                 Attorney for Appellants

## STATEMENT REGARDING ORAL ARGUMENT

Compliance with applicable law in conducting elections is an issue of paramount importance in our constitutional republic, and Appellants respectfully request oral argument in light of the gravity of the election-related issues presented here.

# TABLE OF CONTENTS

Page(s)

Certificate of Interested Parties.................................................................. ii

Statement Regarding Oral Argument .....................................................iv

Table of Contents ..........................................................................................v

Table of Authorities ................................................................................. vii

Jurisdictional Statement ...........................................................................1

Statement of Issues......................................................................................1

Statement of the Case.................................................................................1

    A. Factual Background .........................................................................2

    B. Relevant Procedural History .......................................................7

    C. Ruling Presented for Review ........................................................8

Summary of Argument .............................................................................10

Argument.....................................................................................................11

I. Standard of Review................................................................................11

II. Plaintiffs Have Standing, as Voters and Candidates, to Object to the Cancellation of Legitimate Votes with Illegitimate Ones.. .....................................11

    A.    Plaintiffs Have Injury Traceable to Hollins' Use of Drive-Thru Voting. ................................................................12

    B.    Standing Doctrine Should Not Be Broadened to Deny Judicial Review Entirely. .................................................................18

III. By Failing to Appeal the Ruling Below that Drive-Thru Voting is Illegal on Election Day, Appellees Have Waived this Issued.................................................20

IV. Hollins' Drive-Thru Voting Violates the United States Constitution ...............22

    A.   The Election Clause Requires Upholding the Manner of Voting Defined by the Legislature in the Texas Election Code...........................25

          1.  The Texas Election Code Should Be Strictly Construed ..................27

          2.  Hollins' Attempts to Redefine "Polling Place"...................................27

          3.  The Texas Attorney General Explained the Unlawfulness of Unrestricted Drive-Thru Voting...............................................................30

          4.  The Texas Legislature Has Rejected "Drive-Thru" Voting...............30

          5.  Drive-Thru Voting Locations Were Placed in Democratic Strongholds...................................................................................31

    B.   Hollins' Drive-Thru Voting Scheme Violates the Fourteenth Amendment. ...............................................................................32

V.  The Motions Panel Decision Does Not Bind the Merits Panel .........................32

Conclusion ...............................................................................................34

Certificate of Compliance ........................................................................35

Certificate of Service .............................................................................35

# TABLE OF AUTHORITIES

**Cases**                                                    Page(s)

*Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254 (2015) ..................17

*Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225 (5th Cir. 2010) ... 20-21

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
576 U.S. 787 (2015) ...................................................... 17, 25

*Art Midwest Inc. v. Atl. Ltd. P'ship XII*, 742 F.3d 206 (5th Cir. 2014)............ 20-21

*Baker v. Carr*, 369 U.S. 186 (1962) ...................................................13

*Borrego Springs Bank, N.A. v. Skuna River Lumber, L.L.C. (In re Skuna River
Lumber, L.L.C.)*, 564 F.3d 353 (5th Cir. 2009)...........................................21

*Bush v. Gore*, 531 U.S. 98 (2000)..................................................... 26, 32

*Bush v. Palm Beach Cty. Canvassing Bd.*, 531 U.S. 70 (2000).............................26

*Cook v. Granlike*, 531 U.S. 510 (2001) ...................................................25

*E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242 (9th Cir. 2020) ................. 33

*Gill v. Whitford,* 138 S. Ct. 1916 (2018)............................................. 8, 9, 12, 13, 17

*Greenlaw v. United States*, 554 U.S. 237 (2008).....................................21

*Harding v. Cty. of Dall.*, 948 F.3d 302 (5th Cir. 2020) ...........................14

*In re Hotze*, No. 20-0819, 2020 Tex. LEXIS 990 (Oct. 22, 2020) .............. 9, 27, 29

*In re State*, 602 S.W.3d 549 (Tex. 2020)...................................... 6, 24, 28

*Lance v. Coffman*, 549 U.S. 437 (2007) ......................................... 9, 14, 15, 16, 17

*LULAC v. City of Boerne*, 659 F.3d 421 (5th Cir. 2011)......................................15

*Marts v. Hines*, 117 F.3d 1504 (5th Cir. 1997)................................... 21, 22

*McPherson v. Blacker*, 146 U.S. 1 (1892).............................................26

*Northshore Dev., Inc. v. Lee*, 835 F.2d 580 (5th Cir. 1988)...................................33

*People ex rel. Salazar* v. *Davidson*, 79 P. 3d 1221 (2003), *cert. denied*, 541 U.S.
1093 (2004)............................................................................16

*Raines v. Byrd*, 521 U.S. 811 (1997) ...............................................18

*Reynolds v. Sims*, 377 U.S. 533 (1964)..............................................13

*Richardson v. Hughes*, 978 F.3d 220 (5th Cir. 2020)..................................27

*Smiley v. Holm*, 285 U.S. 355 (1932) ....................................................25

*State v. Hollins,* No. 20-0729, 2020 WL 5919729 (Tex. Oct. 7, 2020) .................27

*Storer v. Brown*, 415 U.S. 724 (1974) ............................................. 25-26

*United States v. Hays*, 515 U.S. 737 (1995) ........................................ 8, 9, 16, 17

*Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016)...................................... 14

**Constitutions and Statutes**

U.S. CONST. amend. XIV, § 1 ...................................................32

U.S. CONST. Art. I, § 4, Cl. 1 ...............................................2, 5, 22, 25

U.S. CONST. Art. II, § 1, Cl. 2 ..................................................25

TEX. CONST. Art. III, § 5 .......................................................19

TEX. CONST. Art. III, § 40 ......................................................19

28 U.S.C. § 1291 .................................................................1

28 U.S.C. § 1331 .................................................................1

Tex. Elec. Code § 33.001 .......................................................23

Tex. Elec. Code § 33.056(a) ....................................................23

Tex. Elec. Code § 33.056(b) ....................................................23

Tex. Elec. Code § 33.060 .......................................................23

Tex. Elec. Code § 33.061 .......................................................23

Tex. Elec. Code § 64.001(a) .................................................6, 28

Tex. Elec. Code § 64.009 .............................................2, 3, 23, 24, 32

Tex. Elec. Code § 64.009(a) .................................................6, 28

Tex. Elec. Code § 82.002(a) ...........................................3, 23, 24, 32

Tex. Elec. Code § 85.036(a) ....................................................29

Tex. Elec. Code § 85.062(b) ....................................................29

Tex. Elec. Code §§ 104.001-104.005 .....................................3, 24, 32

Tex. Gov't Code § 301.001......................................................19, 23

**Articles and Dictionary**

Erin Anderson, *Texas AG: Legal Action for Unlawful Drive-Thru Voting*, Texas Scorecard (Oct. 20, 2020) ..................................................................31

Linda Simard, "Standing Alone: Do We Still Need the Political Question Doctrine?," 100 DICK. L. REV. 303 (1996)..............................................18, 19

Webster's New Collegiate Dictionary (1975) ..........................................................29

## JURISDICTIONAL STATEMENT

This appeal is brought under 28 U.S.C. § 1291 from a final judgment dated November 2, 2020, by the United States District Court, Southern District of Texas. (ROA.1427-35) Plaintiffs-Appellants filed a timely Notice of Appeal on the same day. (ROA.1438) The district court had jurisdiction over these federal law claims under 28 U.S.C. § 1331.

## STATEMENT OF ISSUES

The issues presented are:

1.     Do voters and candidates have standing to object to an illegal form of voting – drive-thru voting – which was never authorized by the Texas legislature?

2.     Did Appellees waive opposition to the substantive ruling below, as to the illegality of drive-thru voting on Election Day, by failing to cross-appeal on it?

3.     Is unrestricted drive-thru voting on Election Day illegal in Texas?

## STATEMENT OF THE CASE

At the only hearing below, on November 2, 2020, Judge Andrew S. Hanen of the district court agreed with Plaintiffs that "drive-thru" voting on Election Day in Harris County – which none of the other 253 counties in Texas allows – is contrary to Texas election law and thus improper. But he dismissed this lawsuit to enjoin drive-thru voting based on a finding of lack of standing by Plaintiffs. Instead, Judge Hanen felt that only the Texas legislature had standing to sue, as

this was a violation of U.S. CONST. ART. I, § 4, Cl. 1, and the Fourteenth Amendment.  The ruling on a lack of standing was a reversible error of law.  The district court recognized that on appeal this Court may reverse on the standing issue, and in anticipation of that the district went further and issued a substantive ruling that drive-thru voting was illegal on Election Day.  (ROA.1428, 1434)

### A. Factual Background

As Harris County Clerk, Defendant Hollins has had the responsibility of enforcing the election laws to ensure a fair and honest election in Harris County. (ROA.21-22, Compl. ¶ 16)  One of the statutory election mandates for which Hollins is responsible deals with curbside, or "drive-thru", voting.  (*Id.*)  This unusual process enables a qualifying voter to vote from a vehicle in lieu of coming inside to vote at a polling location.  (*Id.*)  In order to take advantage of curbside voting, a registered voter must prepare and sign a sworn application.  (*Id.*)  The application is similar to the application to vote by mail, and a voter must affirmatively check specific boxes on the form in order to facially demonstrate to the Early Voting Clerk (Defendant Hollins) compliance with the curbside voting statutes under the Texas Election Code.  (*Id.*)

Under Texas Election Code Sections 64.009, curbside voting is restricted to distinct categories: (i) the voter is sick at the time of the vote; (ii) the voter has a physical condition requiring personal assistance (e.g., is physically handicapped);

or (iii) voting inside the polling location would create a likelihood of injuring the voter's health. (ROA.22, Compl. ¶ 17) *See* Tex. Elec. Code §§ 64.009, 82.002(a), and 104.001-005.

The applicable statutory limits on curbside voting are as follows:

Section 64.009. VOTER UNABLE TO ENTER POLLING PLACE.
(a) If a voter is physically unable to enter the polling place without personal assistance or likelihood of injuring the voter's health, on the voter's request, an election officer shall deliver a ballot to the voter at the polling place entrance or curb.
(b) The regular voting procedures may be modified by the election officer to the extent necessary to conduct voting under this section.
(c) After the voter is accepted for voting, the voter shall mark the ballot and give it to the election officer who shall deposit it in the ballot box.
(d) On the voter's request, a person accompanying the voter shall be permitted to select the voter's ballot and deposit the ballot in the ballot box.

Sec. 82.002. DISABILITY.
(a) A qualified voter is eligible for early voting by mail if the voter has a sickness or physical condition that prevents the voter from appearing at the polling place on election day without a likelihood of needing personal assistance or of injuring the voter's health.

TITLE 7. EARLY VOTING
SUBTITLE B. SPECIAL FORMS OF EARLY VOTING
CHAPTER 104. VOTING ON ELECTION DAY BY DISABLED VOTER FROM VOTING SYSTEM PRECINCT
Sec. 104.001. ELIGIBILITY.
A qualified voter in whose precinct polling place voting is conducted by voting machine is eligible to vote by the early voting procedure provided by this chapter if the voter has a sickness or physical condition that prevents the voter from voting in the regular manner without personal assistance or likelihood of injuring the voter's health.

Sec. 104.002. FORM AND CONTENTS OF APPLICATION.
An application for a ballot voted under this chapter must:
(1) be in the form of an affidavit; and

(2) include, in addition to the information required by the applicable provisions of Section 84.002, a statement that the applicant has not previously voted in the election.

Sec. 104.003. TIME AND PLACE FOR VOTING.
Voting under this chapter shall be conducted on election day, beginning at 7 a.m. and concluding at 7 p.m., at the main early voting polling place. However, if the early voting ballots voted by mail are processed at a location other than the main early voting polling place, the early voting clerk may require the voting to be conducted at that location.

Sec. 104.004. VOTING PROCEDURE.
(a) On submission of an application to the early voting clerk, the clerk shall review the application and verify the applicant's registration status in accordance with the procedure applicable to early voting by mail.
(b) The voting shall be conducted with the balloting materials for early voting by mail.
(c)The voter must mark and seal the ballot in the same manner as if voting by mail except that the certificate on the carrier envelope need not be completed.
(d) On sealing the carrier envelope, the voter must give it to the clerk, who shall note on the envelope that the ballot is voted under this chapter.
(e) If the voter is physically unable to enter the early voting polling place without personal assistance or a likelihood of injuring the voter's health, the clerk shall deliver the balloting materials to the voter at the polling place entrance or curb.

Sec. 104.005. PROCESSING RESULTS.
The results of voting under this chapter shall be processed in accordance with the procedures applicable to processing early voting ballots voted by mail.

Despite the fact that the Texas Election Code restricts curbside voting to

specific and narrowly defined categories of voters, Defendant Hollins – using the

COVID-19 pandemic as his pretext – permitted many Harris County registered

voters to vote curbside or drive-thru and vote in violation of the Texas Election

4

Code, which is the applicable authority pursuant to U.S. CONST. Art. I, § 4, cl. 1.

(ROA.23-24, Compl. ¶ 19)

Specifically, Defendant Hollins implemented a countywide "drive-thru" voting program for every registered voter in Harris County, and he publicly stated the following:

> Drive-thru voting is an option for all voters who would like to be able to vote from the safety and comfort of your vehicle. Drive-thru voting allows those who don't qualify to vote by mail to minimize your exposure to other voters and to election workers. While we hope to have short lines across the county, drive-thru voters waiting in line will be able to wait in the comfort of your vehicle where you can listen to the radio or converse with loved ones until you are pointed to your drive-thru voting booth. We hope that Harris County voters will consider utilizing drive-thru voting.

(ROA.24, Compl. ¶ 20)  Hollins thereby allowed Harris County registered voters to vote curbside (drive-thru) without regard to whether they are eligible to vote curbside, contrary to his clear and non-discretionary ministerial duties under the United States Constitution and the Texas Election Code.  (ROA.24-25, Compl. ¶ 21)

Under Defendant Hollins's drive-thru voting scheme, a car is turned into a polling location such that in a drive-thru vote the voter never exits the vehicle. (ROA.25, *Id.* ¶ 22)  Instead, the voters sit in their cars as the e-slate is hand-delivered to the voters who then cast their votes within the confines of their vehicles.  (*Id.*)  Many times these votes are cast by numerous people in one car, eliminating the confidentiality surrounding one's vote.  (*Id.*)  The garages, tents,

canopies, and other "coverings" the car drives into are not the actual polling location – the polling place is the car.  (*Id.*)  The e-slate is physically placed in the car; the vote is cast in the car; and the voter remains in the car without ever physically exiting the car for this process.  (*Id.*)  A car is not a legitimate "polling place"; if a car were a polling place, Harris County now has millions of voting locations around the county that change locations throughout the day.  (*Id.*)

The Texas Election Code mandates that a registered voter cast a ballot in a "voting station" at a "polling place."  (ROA.25-26, Compl. ¶ 23, citing Tex. Elec. Code §§ 64.001(a), 64.009(a))  Only qualified individuals may properly request their ballot curbside in a vehicle on Election Day and throughout the early voting period.  *Id.* § 64.009(a). This exception applies only to those physically unable to enter the polling place without assistance or for whom a likelihood of injury exists. *Id.*; *see also In re State*, 602 S.W.3d 549, 550 (Tex. 2020) (a voter's general fear or lack of immunity from COVID-19 is not a "disability" as defined by the Election Code).  Otherwise, voting is to take place in a "polling place."  Tex. Elec. Code § 64.009(a).

On October 16, 2020, Attorney General Ken Paxton addressed the issue of "drive-thru" voting and stated, among other things, that the Texas Election Code "makes no provision for 'drive-thru' voting centers at which any voter may cast a ballot from his or her vehicle …."  (ROA.26, Compl. ¶ 24, ROA.47)

Harris County accounts for nearly 15 percent of all registered voters in Texas.  (ROA.26, Compl. ¶ 25)

### B.  Relevant Procedural History

Plaintiffs filed their Complaint on October 28, 2020.  (ROA.18, Dkt. 1) Two days later, on October 30, Plaintiffs their motion for a preliminary injunction along with a supporting brief and exhibits.  (ROA.63, ROA.67, Dkt. 3 & 4)

Also on October 30 and within a few days afterwards, numerous parties then filed motions to intervene, most notably the Democratic Senatorial Campaign Committee (DSCC) and the Democratic Congressional Campaign Committee (DCCC).  (ROA.93, Dkt. 5)  Ultimately the district court allowed intervention by individuals, but not by organizations.  (ROA.1423, Dkt. 59)

The district court held a hearing on November 2, 2020, which was the day before Election Day, and issued its written ruling later that same day.  (ROA.1427-35)  Within hours Plaintiffs-Appellants filed their Notice of Appeal (ROA.1438), and then sought emergency relief in this Court which was quickly denied in a one-sentence per curiam decision:

> IT IS ORDERED that appellants' motion for injunctive relief to issue a preliminary injunction banning drive-thru voting on Election Day, November 3, 2020, is DENIED.

(ROA.1437, Stewart, Graves, and Higginson, JJ.)

Appellees did not appeal the substantive ruling below that drive-thru voting is illegal on Election Day.

## C. Ruling Presented for Review

The district court ruled that drive-thru early voting had already occurred and would not be stricken after-the-fact by the court (ROA.1431-32), but is illegal for voting on Election Day itself because the tents used for drive-thru voting do not qualify as buildings as required for Election Day. (ROA.1433-35) Despite this, the district court denied Plaintiffs' motion for a preliminary injunction based on finding a lack of standing. (ROA.1428-29) The district court held that Plaintiffs – who include voters, candidates for office, and a member of the Texas legislature (ROA.20, Compl. ¶¶ 11-14) – lacked standing.

The district court addressed the standing for Plaintiffs' claims under the Equal Protection Clause and the Elections Clause separately. First, as to the Equal Protection Clause, "Plaintiffs' general claim that Harris County's election is being administered differently than Texas's other counties does not rise to the level of the sort of particularized injury that the Supreme Court has required for constitutional standing in elections cases." (ROA.1428, citing *United States v. Hays*, 515 U.S. 737, 743 (1995), and *Gill v. Whitford,* 138 S. Ct. 1916, 1933 (2018)).

The district court held that only the Texas legislature would have standing to object to the unlawfulness of drive-thru voting:

only the state legislature (or a majority of the members thereof) have standing to assert a violation of the Elections Clause.

(ROA.1429). But the Texas legislature was not in session at any time in 2020; it meets in the first part of only every other odd-numbered years. Under the district court's holding, no one could challenge illegality under the Election Clause by a county clerk in conducting an election, as the Texas legislature is typically never in session during a General Election.[1]

The district court relied on a broad interpretation of a decision by the Supreme Court, which has not been construed as expansively by this Fifth Circuit. (ROA.1428-29, citing *Lance v. Coffman*, 549 U.S. 437 (2007) (per curiam)). The Supreme Court in *Lance* rejected a generalized lawsuit by four citizens of Colorado against redistricting after the issue had already been fully litigated by state authorities. The district court further relied on two additional redistricting cases, *U.S. v. Hays,* 515 U.S. 737, 743 (1995) and *Gill v. Whitford,* 138 S. Ct. 1916, 1933 (2018). All three of these precedents turned away challenges to redistricting.

The district court concluded that:

---

[1] On November 1, 2020, the Texas Supreme Court declined to rule substantively on this issue (*In re Hotze*, No. 20-0819, 2020 Tex. LEXIS 990 (Oct. 22, 2020)), and the district court properly rejected arguments by Hollins that federal court should abstain and defer to the state court. (ROA.1443)

this Court, had it found that standing existed, ***would have granted the injunction prospectively and enjoined drive-thru voting on Election Day*** and denied all other relief.

(ROA.1435, emphasis added)

## SUMMARY OF ARGUMENT

Improper ballots must be excluded, lest valid votes be cancelled by invalid ones. If a ballot is cast in a way that the legislature did not authorize, then it is an illegitimate vote which must be excluded. Otherwise the law-abiding votes are cancelled out, and do not really count. The goal of "count every vote" ***requires*** not counting any improper votes.

The error below was in the district court ruling that only the Texas legislature has standing to challenge the allowance of illegitimate votes. This is not, and cannot be, the law. Candidates affected by the inclusion of illegal votes are injured by it, and have clear standing to challenge such inclusion. Voters themselves who face the cancellation of their lawful votes by the inclusion of illegal ones have standing to object to such a cancellation of their own votes.

A simple hypothetical illustrates the standing of both candidates and voters, who are included as plaintiffs here. If Plaintiff-Appellant Hotze had showed up at an election booth on Election Day and been denied the opportunity to vote, then he would plainly have standing to challenge that. If, instead, poll workers allowed Plaintiff Hotze to vote but simultaneously allowed an illegal vote – or ten illegal

votes – to offset that of Plaintiff Hotze, he would also plainly have standing to object. His vote would have thereby been unlawfully deprived its significance. Similarly, if a candidate sees that a carload of illegal voters is allowed to cast ballots in his election, then he has standing to object.

Appellees did not cross-appeal the substantive ruling below that drive-thru voting is illegal on Election Day, and thereby waive that issue.

## ARGUMENT

The allowance of an illegitimate vote has the effect of cancelling a legitimate vote. The mantra "count every vote" *requires not counting improper or illegal votes*, because counting such votes cancels the lawful ones and disenfranchises the lawful voters. The permissive approach of allowing improper ballots to be cast has the effect of unlawfully negating lawful votes.

### I. Standard of Review.

Review is *de novo* here on the rulings of law by the court below in dismissing this case on standing grounds. In addition, as explained in Point V below, the one-sentence order by the motions panel does not bind this merits panel.

### II. Plaintiffs Have Standing, as Voters and Candidates, to Object to the Cancellation of Legitimate Votes with Illegitimate Ones.

Plaintiffs-Appellants, who include registered voters, a current member of the Texas legislature, and state and federal candidates in Harris County, have standing to challenge this illegal procedure of unauthorized drive-thru voting. As alleged in

the district court and explained below, Plaintiffs consist of multiple registered voters in Harris County (Hotze, Champion, and Hemphill), the Republican nominee for the 18th Congressional district in Texas (Champion), and a member of the Texas House of Representatives, District 15 (Toth). (ROA.20, Compl. ¶¶ 11-14) Three of these Plaintiffs (Champion, Toth, and Hemphill) were on the ballot in this election. Supreme Court precedent recognizes standing by voters to challenge improper election procedures which might dilute their vote. *See Gill v. Whitford*, 138 S. Ct. at 1929. Allowing illegal voting in Harris County does precisely that. Plaintiffs plainly have standing to seek an injunction against it.

### A. Plaintiffs Have Injury Traceable to Hollins' Use of Drive-Thru Voting.

Defendant Hollins' violation of the law significantly harmed the interests of Plaintiffs, and such injuries are directly traceable to Hollins' challenged actions; moreover, a favorable judgment by this Court will likely redress such injuries. (ROA.20 1, Compl. ¶ 10) Plaintiff Hotze has standing because he is threatened with a violation of his right to vote, and allowing an illegal voting scheme that invites corruption and fraud dilutes and suppresses his vote because his legal vote will be nullified by illegal votes. (*Id.* ¶ 11) Plaintiff Champion was the Republican nominee for the 18th District, Harris County, Texas, and Defendant Hollins' illegal vote scheme resulted in votes being illegally cast against Champion in his race for the United States Congress. (*Id.* ¶ 12) Plaintiff Hemphill was also

on the November 3, 2020 general election ballot in Harris County, Texas, and Hollins' illegal vote scheme resulted in votes being illegally cast in her race for the 80th Judicial District Court. (*Id.* ¶ 13) Representative Steve Toth is a member of the Texas legislature and was also on the November 3, 2020 general election ballot, and his authority was usurped as a lawmaker by Hollins' adopting and implementing a voting scheme that was not adopted by the Texas legislature. (*Id.* ¶ 14)

"Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). This right "can neither be denied outright ... nor destroyed by alteration of ballots ... nor diluted by ballot-box stuffing." *Id.* (citations omitted). "The right to vote is 'individual and personal in nature,' and 'voters who allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage." *Gill v. Whitford*, 138 S. Ct. at 1920 (quoting *Reynolds*, 377 U.S. at 561 and *Baker v. Carr*, 369 U.S. 186, 206 (1962)). Plaintiffs objected to the casting and to the counting of any ineligible or illegal curbside voting as the consequence of permitting such activity harms not only the integrity and the reported outcomes of the election for all of the candidates and all of the voters who voted, but it also diluted and otherwise diminished and canceled

Plaintiffs' casting of a legal vote for the candidates of their choice in the General Election.

As this Fifth Circuit has held:

Standing is not a pop quiz administered by able defense attorneys to unsophisticated plaintiffs. It is conceded that each voter resides in a district where their vote has been cracked or packed. That is enough. And the contention that the Plaintiffs' injury cannot be redressed here collapses standing and merit resolution.

*Harding v. Cty. of Dall.*, 948 F.3d 302, 307 (5th Cir. 2020).

When votes are cast illegally, in this case in overwhelmingly Democratic precincts, then the votes by other Harris County residents are improperly diluted and those law-abiding voters have standing to challenge the illegality. The voter ID requirement, for example, sparked intense disagreement but standing to challenge the law was not in doubt. *See Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016). There is clear standing by voters to object to voter ID, and likewise there is standing by voters to object to the dilution of their votes by unlawful ones.

The district court relied heavily on *Lance v. Coffman*, but neither that case nor any other held that if a government action violates the rights of all citizens, then no citizen has standing to challenge that action in federal court. The harm here is particularized in this case to voters and candidates who are adversely affected by allowing improper drive-thru voting. Organizations affiliated with the Democratic Party and a Democrat candidate for Senate sought to intervene below

to defend drive-thru voting, thereby indicating that the method of voting helped

rather than harmed them. This case is not about a generalized, abstract harm

similar to that in *Lance v. Coffman*.

This Fifth Circuit has already rejected another attempt to invoke *Lance* to

deny standing to a voter under the Voting Rights Act:

> What distinguishes *Lance* from the present case is that in *Lance*, the plaintiffs were not deprived of the right to vote for any office. They each undoubtedly had a right to vote for one member of the U.S. House of Representatives in a single-member district; the only thing at stake in *Lance* was whether they would vote in districts drawn by the state legislature or by a state court. By contrast, in the present case and in *LULAC No. 4434*, the type of injury that serves as the basis for standing is the deprivation of a voter's pre-existing right to vote for certain offices. Therefore, *Lance* does not cast any doubt on the continuing validity of our en banc court's holding in *LULAC No. 4434* that Wood and Entz, as voters, had suffered concrete and particularized injuries which satisfied the injury-in-fact requirement of Article III standing doctrine. And because Morton's injury is of essentially the same kind and effect as Wood and Entz's injuries, *viz.*, a complete deprivation of his right to vote in the election of persons to particular offices, *Lance* does not affect our conclusion that Morton, too, satisfies the injury-in-fact requirement.

*LULAC v. City of Boerne*, 659 F.3d 421, 430 (5th Cir. 2011). Here, unlike *Lance*,

Plaintiffs' "pre-existing right to vote for certain offices" is undermined and

infringed upon by Defendants' conduct in allowing improper drive-thru voting.

Thus standing exists here for Plaintiffs under controlling Fifth Circuit authority.

In addition, the Supreme Court in *Lance v. Coffman* did not use standing

doctrine to deny judicial review entirely, as the ruling below does. Underlying

*Lance v. Coffman* was a prior lawsuit by Colorado's attorney general, who filed an

original action in the Colorado Supreme Court to enjoin Colorado's secretary of state from implementing a new redistricting plan, and the Colorado General Assembly intervened in the action to defend its redistricting plan. The Colorado Supreme Court granted the injunction by holding that "judicially-created districts are just as binding and permanent as districts created by the General Assembly," and that the court-drawn plan must remain in effect until the next decennial census. *People ex rel. Salazar* v. *Davidson*, 79 P. 3d 1221, 1231 (2003), *cert. denied*, 541 U.S. 1093 (2004). The Colorado Supreme Court then held that this result does not violate the Elections Clause of the U.S. Constitution. 79 P. 3d, at 1232. It was only after that full judicial review and adjudication of the issue that four residents of Colorado subsequently sued to challenge the redistricting again, and it was that lawsuit which the U.S. Supreme Court dismissed for lack of standing. *Lance v. Coffman*, 549 U.S. 437, 438 (2007) ("Immediately after *Salazar* was decided, four Colorado citizens – none of whom had participated in *Salazar* – filed the instant action in Federal District Court."). Standing doctrine was not used by the Supreme Court in *Lance* to deny judicial review entirely concerning an issue.

Other standing cases relied upon by the court below, which relate to redistricting issues, are likewise inapposite. In *United States v. Hays*, the U.S. Supreme Court held that plaintiffs "do not live in the district that is the primary focus of their racial gerrymandering claim, and they have not otherwise

16

demonstrated that they, personally, have been subjected to a racial classification."

515 U.S. 737, 739 (1995). "For that reason, we conclude that appellees lack

standing to bring this lawsuit." *Id.* Nothing in *Hays* supports a denial of standing

to a plaintiff whose vote is offset or essentially canceled by an improper vote.

In *Gill v. Whitford,* the U.S. Supreme Court dismissed an appeal because the

plaintiffs had not shown that they lived in a "packed" district in their challenge to

redistricting, but were allowed the ability to make that showing on remand. 138 S.

Ct. 1916, 1924 (2018). Like *Lance*, *Gill* was a redistricting case, which is

conceptually different from a challenge to allowing illegal votes to cancel lawful

ones to deprive the candidate Plaintiffs of a fair election outcome:

> We therefore remand the case to the District Court so that the plaintiffs may
> have an opportunity to prove concrete and particularized injuries using
> evidence—unlike the bulk of the evidence presented thus far—that would
> tend to demonstrate a burden on their individual votes. *Cf. Alabama
> Legislative Black Caucus*, 575 U. S., at ___, 135 S. Ct. 1257, 191 L. Ed. 2d
> 314, 329 (remanding for further consideration of the plaintiffs'
> gerrymandering claims on a district-by-district basis).

*Gill v. Whitford*, 138 S. Ct. at 1934. Here, Plaintiffs made that showing: by

allowing unlawful votes, Hollins canceled Plaintiffs' lawful votes and potentially

altered the election outcome for the candidate Plaintiffs. The district court also

misplaces reliance on *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,

as standing existed there for the legislature to oppose a deprivation of its own

authority over redistricting. 576 U.S. 787, 793 (2015). That is not the issue here.

**B.      Standing Doctrine Should Not Be Broadened to Deny Judicial Review Entirely.**

Standing doctrine is not to be misused to deny judicial review to lawsuits challenging illegal voting, an issue vital to our constitutional republic.  Standing doctrine has never properly been a basis for essentially denying all judicial review on fundamental issues.  *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("The standing inquiry focuses on whether the plaintiff is ***the*** proper party to bring this suit ....") (emphasis added).  The effect of the expansion of standing doctrine below is to deny relief to anyone for illegal conduct that favors one side of the political spectrum, namely Democrats.  It is a misuse of standing doctrine to deny judicial review in a way that has an imbalanced partisan political impact.

Particularly when there is a political impact to denying judicial review, standing doctrine should remained tethered to its principled foundation, which is to preserve the "case" or "controversy" requirement of Article III and to respect separation of powers.  Linda Simard, "Standing Alone: Do We Still Need the Political Question Doctrine?," 100 DICK. L. REV. 303, 318-23 (1996) (hereinafter, "*Simard, Standing Alone*").  Both principles are easily satisfied here.

There is a case or controversy here, as Plaintiffs seek to block illegal votes which cancel their own votes and which thereby potentially change the outcome of elections in which several Plaintiffs are candidates.  Losing an election due to illegal votes is an injury, obviously, as is having one's lawful vote canceled by an

unlawful one.  There is no doubt that the parties to this action are adversarial such that a proper litigation of the issue of drive-thru voting may be achieved.  There is no suggestion that Plaintiffs seek merely an advisory opinion here, which is what Article III standing doctrine prohibits.  There is no possibility of a court "legislating from the bench" in this case, because Plaintiffs are attempting to enforce legislation for election integrity rather than undermine it.

The ruling below effectively denied judicial review on the issue of illegal drive-thru voting, thereby granting county officials carte blanche to allow it and other forms of illegal voting as much as they like.  Specifically, the district court held that only the Texas legislature would have standing to sue to stop illegal drive-thru voting.  But the Texas legislature is not even in session in an election year.  TEX. CONST. Art. III, § 5; Tex. Gov't Code § 301.001 ("The legislature shall convene at the seat of government in regular session at 12 noon on the second Tuesday in January of each odd-numbered year.").  It cannot call its own special session, either, which is a power reserved to the Texas Governor.  TEX. CONST. Art. III, § 40.

The other foundation of standing doctrine – to preserve the separation of powers – weighs in favor of standing here.  The separation of powers doctrine embodies a check and balance by one branch of government against another. *Simard, Standing Alone*, 100 DICK. L. REV. at 319-21.  The lawfulness of an

unprecedented form of voting in a presidential election is precisely the sort of issue

for which there should be judicial review, in order to reduce unconstitutional

conduct by another branch of government.  In this case the unlawful voting is

conducted by a county rather than federal official, but the results of that voting

dictates the election of federal officials, and thus judicial review is both proper and

necessary.

No valid purpose is served by the overly expansive view of standing

doctrine taken below, which has the effect of removing any judicial accountability

for unprecedented, and improper, methods for collecting and counting ballots in

federal elections.

### III.    By Failing to Appeal the Ruling Below that Drive-Thru Voting is Illegal on Election Day, Appellees Have Waived this Issue.

None of the Appellees filed a protective or cross-appeal on the ruling below

that went against them:  drive-thru voting is illegal on Election Day in Texas.

Under clear Fifth Circuit and Supreme Court authority, that failure to cross-appeal

precludes Appellees from challenging that ruling in this case on appeal or on

remand.

"[T]his circuit follows the general rule that, in the absence of a cross-appeal,

an appellate court has no jurisdiction to modify a judgment so as to enlarge the

rights of the appellee or diminish the rights of the appellant." *Art Midwest Inc. v.*

*Atl. Ltd. P'ship XII*, 742 F.3d 206, 211 (5th Cir. 2014) (quoting *Amazing Spaces,*

*Inc. v. Metro Mini Storage*, 608 F.3d 225, 250 (5th Cir. 2010) (alteration in

original, quoting *Borrego Springs Bank, N.A. v. Skuna River Lumber, L.L.C. (In re*

*Skuna River Lumber, L.L.C.*), 564 F.3d 353, 356 (5th Cir. 2009)).

The Supreme Court has held likewise. "This Court, from its earliest years,

has recognized that it takes a cross-appeal to justify a remedy in favor of an

appellee." *Greenlaw v. United States*, 554 U.S. 237, 244-45 (2008).

It logically follows from these precedents, and this Court has so held, that

likewise Appellees may not object on remand to the holding that drive-thru voting

is illegal on Election Day in Texas. As this Court explained, citing numerous

authorities:

> We hold that the ART entities' decision not to cross-appeal the jury's fraud
> findings in the first district court proceeding prevented them from raising the
> same rejected fraud claims in the second district court proceeding. Even
> though they prevailed on many of their claims in the first district court
> proceeding, the consensus of circuit authority supports that the ART entities
> could have filed a "protective" or "conditional" cross-appeal of the adverse
> fraud finding. The consensus of circuit authority also supports that, by not
> cross-appealing the fraud finding, the ART entities could not raise the same
> fraud claims on remand.

*Art Midwest Inc.*, 742 F.3d at 212 (numerous citations omitted).

"[T]he failure to take a protective or cross-appeal may in certain rare

instances be waived by a court of appeals." *Marts v. Hines*, 117 F.3d 1504, 1519

(5th Cir. 1997). But no such "rare instances" exist here to excuse the lack of a

protective or cross-appeal by Appellees on the ruling below that drive-thru voting is illegal on Election Day in Texas. Counsel for Appellees are multiple sophisticated attorneys and law firms, and this case is conceptually simple. "We should not so casually depart from such inveterate and certain rules." *Marts v. Hines*, 117 F.3d at 1519.

## IV. Hollins' Drive-Thru Voting Violates the United States Constitution.

Although unnecessary for this Court to reach the constitutionality issue in light of the lack of a cross-appeal, a brief argument demonstrating that Hollins' drive-thru voting scheme violated Article I, Section 4, Clause 1 of the United States Constitution is as follows. Hollins redefined the manner of conducting elections in Harris County contrary to the Texas Election Code. Additionally, Hollins violated the Fourteenth Amendment's Equal Protection Clause by adopting a manner of voting in Harris County that has not been adopted by other Texas counties.

Drive-thru voting was set up by the Democratic election official Hollins almost entirely in Democratic-voting areas of Harris County. (ROA.33, Compl. ¶ 41) Drive-thru voting compromises the integrity of the ballot in terms of who votes, akin to allowing multiple people into a polling booth at the same time despite a lack of any disability. Drive-thru voting also compromises the secret ballot, as when car pools of workers or families vote in that manner. The Texas

legislature has already decided, in its wisdom, not to allow drive-thru voting except for the disabled.  Tex. Elec. Code §§ 64.009, 82.002(a).  Drive-thru voting allows people to be influenced while they are voting, such as by smart phones or the radio, contrary to rules against politicking in proximity to a polling booth.  More generally, drive-thru voting cheapens the election process to the detriment of in-person voting, thereby detracting from the traditional respect for Election Day.

Drive-thru voting further interferes with the essential role of an "election watcher," who is "a person appointed ... to observe the conduct of an election on behalf of a candidate, a political party, or the proponents or opponents of a measure."  Tex. Elec. Code § 33.001.  Under chapter 33 of the Texas election code, a watcher is entitled to:

- "observe any activity conducted at the location at which the watcher is serving," *id.* § 33.056(a);
- "sit or stand conveniently near the election officers conducting the observed activity," *id.*;
- "sit or stand near enough to the member of a counting team who is announcing the votes to verify that the ballots are read correctly or to a member who is tallying the votes to verify that they are tallied correctly," *id.* § 33.056(b);
- accompany the officer in making the delivery of election records, *id.* § 33.060.

Chapter 33 sets forth criminal penalties for someone who violates a watcher's ability to complete his or her duties, and violations are Class A misdemeanors. *Id.* § 33.061. But drive-thru voting impedes this important function of election

watchers, which is necessary to maintain the integrity of the election process for voters and candidates alike.

On May 15, 2020, the Texas Supreme Court rejected Hollins' contention that a voter's lack of immunity from COVID-19 and concern about contracting it at a polling place constitutes a "disability" within the meaning of the statute permitting a voter to cast a ballot by mail. *In re State*, 602 S.W.3d 549, 550 (Tex. 2020). Yet Hollins' drive-thru voting scheme allowed any and all Harris County registered voters – regardless of whether they are permitted to do so under the Texas Election Code – to engage in early and Election Day drive-thru voting. Hollins, who is a Democrat and currently serves as Deputy Vice-Chair of Finance for the Democratic Party of Texas, identified ten (10) drive-thru voting locations and placed nine (9) of the locations in heavily Democratic areas. (ROA.33, Compl. ¶ 41, ROA.1275)

The Texas Legislature restricted curbside voting to three distinct categories: (i) a voter who presents as sick at the time of the vote; (ii) a voter who has a physical condition requiring personal assistance (e.g., is physically handicapped); or (iii) if voting inside the polling location would create a likelihood of injuring the voter's health. *See generally* Tex. Elec. Code §§64.009, 82.002(a), and 104.001-104.005. Additionally, if a voter qualifies as disabled under Texas Election Code § 82.002 the voter is eligible to vote by mail. Hollins ignored these limitations.

**A.  The Election Clause Requires Upholding the Manner of Voting Defined by the Legislature in the Texas Election Code.**

The  Elections Clause in the U.S. Constitution states that "[t]he Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof," subject to the directives of Congress.  U.S. CONST. Art. I, § 4, Cl. 1.  Because federal offices "arise from the Constitution itself," any "state authority to regulate election to those offices ... had to be delegated to, rather than reserved by, the States." *Cook v. Gralike*, 531 U.S. 510, 522 (2001).  *See also* U.S. CONST. Art. II, § 1, Cl. 2.

The Elections Clause vests State legislatures, subject to Congress' enactments, with authority "to provide a complete code for congressional elections." *Smiley v. Holm*, 285 U.S. 355, 366 (1932); *see also Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 826 (2015) (Roberts, C.J., dissenting) (noting that the Elections Clause "imposes a duty on States and assigns that duty to a particular state actor").  This "broad power to prescribe the procedural mechanisms for holding congressional elections," *Cook v. Granlike*, 531 U.S. 510, 523 (2001) (internal quotation marks omitted), includes authority to enact "the numerous requirements as to the procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved," *Smiley*, 285 U.S. at 366; *Cook,* 531 U.S. at 523–24; *see also Storer v.*

*Brown*, 415 U.S. 724, 730 (1974) (stating that state legislatures may enact election laws in order to ensure that elections are "fair and honest" and that "some sort of order, rather than chaos, is to accompany the democratic process"). This sweeping grant of authority means that "the text of [state] election law itself, and not just its interpretation by the courts of the States, takes on independent significance," *Bush v. Gore*, 531 U.S. 98, 112–13 (2000) (Rehnquist, C.J., concurring), and the federal Constitution "operate[s] as a limitation upon the State in respect of any attempt to circumscribe the [delegated] legislative power," *Bush v. Palm Beach Cty. Canvassing Bd.*, 531 U.S. 70, 76 (2000) (quoting *McPherson v. Blacker*, 146 U.S. 1, 25 (1892)). The United States Supreme Court has made it clear that "[a] significant departure from the legislative scheme for electing U.S. Representatives – including when such departure is carried out by the state judiciary – thus presents a federal constitutional question." *Bush v. Gore*, 531 U.S. at 113 (Rehnquist, C.J., concurring); *see also Palm Beach Cnty.*, 531 U.S. at 76; *McPherson*, 146 U.S. at 25.

The Texas legislature created a detailed statutory scheme related to curbside voting to govern the conduct of federal elections. Hollins significantly departed from the legislative scheme regarding curbside voting, and Hollins' drive-thru voting scheme violated the United States Constitution, Art. I, § 4, Cl. 1.

### 1. The Texas Election Code Should Be Strictly Construed.

Courts have "stated in no uncertain terms that county election officials possess only those powers 'granted in express words' or 'necessarily or fairly implied in an express grant.'" *In re Hotze*, No. 20-0819, 2020 Tex. LEXIS 990, *1 (Oct. 22, 2020) (Devine, J., dissenting from denial of petition) (quoting *State v. Hollins,* No. 20-0729, 2020 WL 5919729, at *4 (Tex. Oct. 7, 2020) (per curiam) (internal quotations omitted)). As Justice Devine wrote in his dissent in *In re Hotze*, "[t]hese implied powers are themselves narrow—they must be 'indispensable,' 'not simply convenient.'" *Id.* The powers are governed by a "lengthy, detailed, and comprehensive Election Code." *Id.* at *2. Hollins' acts were outside the dictates of the Election Code and thus improper. *See, e.g.*, *Richardson v. Hughes*, 978 F.3d 220, 224 (5th Cir. 2020) (reversing a district court decision that had required changes to the signature-verification requirement in the Texas Election Code for mailed-in ballots). Nothing in the Texas Election Code allows for Hollins' drive-thru voting, and thus it is improper.

### 2. Hollins' Attempts to Redefine "Polling Place."

Under Hollins' drive-thru voting scheme, a car is turned into a polling location. Specifically, the voter never exits the vehicle in drive-thru voting. (ROA.1275-76) Instead, the voter sits in his car as the e-slate is hand-delivered to the voter who then casts his vote within the confines of his vehicle. (*Id.*) It should

be noted that many times these votes are cast by numerous people in one car, eliminating the necessary secrecy surrounding one's vote. (*Id.*) The garages, tents, canopies, and other "coverings" the car drives into are not the actual polling location - the polling place is the car. The e-slate is physically placed in the car, the vote is cast in the car, and the voter remains in the car. (*Id.*)

A car is not a polling place. If a car were a polling place, then Harris County would have millions of voting locations around the county that change locations throughout Election Day. The Election Code mandates that a registered voter cast a ballot in a "voting station" at a "polling place." *See* Tex. Elec. Code §§ 64.001(a), 64.009(a).

Individuals who satisfy strict qualifications may request their ballots curbside in a vehicle on Election Day and throughout the early voting period. *Id*. § 64.009(a). This qualification is limited to only those physically unable to enter the polling place without assistance or for whom a likelihood of injury exists. *Id.*; *see also In re State*, 602 S.W.3d 549, 550 (Tex. 2020) (a voter's general fear or lack of immunity from COVID-19 is not a "disability" as defined by the Election Code). Otherwise, voting is to take place in a "polling place." Tex. Elec. Code § 64.009(a). Hollins presumes that rows of semi-permanent tents where election officers stand awaiting dozens of cars, inside of which any voter may cast a ballot, qualify as a "polling place."

The Texas Election Code states that polling locations "may be located in any stationary structure," including a "movable structure." *Id*. § 85.062(b). Hollins has previously argued that these "tents" satisfy the requirements of movable structure. However, as Justice Devine has stated, "the Texas Election Code likely contemplates that 'structure' is a place one enters to get to the polling place; the structure itself is not the polling place." *In re Hotze*, 2020 Tex. LEXIS 990, at *3-4 (Devine, J., dissenting from denial of petition).

The Texas Election Code prohibits electioneering "within 100 feet of an outside door through which a voter may enter the building or structure in which the early voting polling place is located." Texas Elec. Code § 85.036(a) (emphasis added). As Justice Devine concluded, "The prepositional phrase 'in which' indicates that the polling place is to be inside of a building or structure. The structure itself cannot be the polling place and the voting station rolled into one. Even harder to understand is how one's vehicle could qualify as a 'polling place,' as it is not a 'structure' as commonly understood. Nor can one's vehicle be a 'voting station,' which is a specific location designated for voters to cast a ballot. "Station," Webster's New Collegiate Dictionary (1975) ("[A] place established to provide a public service."). Hollins' expansive view of the statute manifests itself in the absurd result that every voter's vehicle would thereby be a "polling place" or "voting station."

### 3. The Texas Attorney General Explained the Unlawfulness of Unrestricted Drive-Thru Voting.

On October 16, 2020, Attorney General Ken Paxton explained by letter that the Texas Election Code "makes no provision for 'drive-thru' voting centers at which any voter may cast a ballot from his or her vehicle." (ROA.1284, Dist. Ct. Dkt. 39-3)

### 4. The Texas Legislature Has Rejected "Drive-Thru" Voting.

Legislators have unsuccessfully attempted to amend the Texas Election Code to allow some type of Hollins' "drive-thru" voting scheme. During the 2019 legislative session, legislation was proposed to allow polling places to accommodate parents with young children, HB 2898. (ROA.1296-97) Because Texas law required curbside voting for people with disabilities, HB 2898 left it up to local election officials to decide whether to offer curbside voting for parents with young children. (ROA.1296) The bill also sought to authorize a study to be performed by the Texas Secretary of State's office in order to evaluate the best practices for curbside voting for people with children and report it to the legislature by December 2020. (*Id.*) The Texas House approved the bill that supporters believed would increase voter turnout by allowing parents with children younger than five (5) years old to participate in curbside voting. (ROA.1297)

The argument for the bill was similar to that made by Hollins as a justification for his drive-thru voting scheme.  On May 8, 2019, the House gave the bill final approval in a 90-52 vote.  But the Texas Senate did not pass the bill.

Here, Hollins is implementing a form of "drive-thru" or curbside voting that is much broader than even the one rejected by the Texas Legislature. A pandemic should not become a license for a county clerk to turn himself into a super-legislature.  The Texas legislature has effectively rejected Hollins' scheme, and so should the Fifth Circuit.

### 5.    Drive-Thru Voting Locations Were Placed in Democratic Strongholds.

Nine of the ten "drive-thru" voting locations in Harris County were placed in areas that vote heavily Democratic.  (ROA.1275)  Texas State Sen. Paul Bettencourt (R-Houston) recently noted nine of the ten drive-thru voting locations were in Democrat areas of the county, adding that "nothing in the Texas election code allows Mr. Hollins to do this setup."  Erin Anderson, *Texas AG: Legal Action for Unlawful Drive-Thru Voting*, Texas Scorecard (Oct. 20, 2020).

## B. Hollins' Drive-Thru Voting Scheme Violates the Fourteenth Amendment.

As the Fourteenth Amendment to the United States Constitution provides, "No State shall ... deny to any person ... the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Harris County is the only Texas County subjected to drive-thru voting. (ROA.1276)

Hollins has thereby violated the Equal Protection Clause, in that Harris County, unlike other counties, surrenders the safeguards associated with curbside voting while other counties maintain the integrity of the ballot box by complying with the strict requirements imposed by the Texas Legislature in §§ 64.009, 82.002(a), and 104.001-104.005 of the Texas Election Code. The U.S. Supreme Court per curiam opinion in *Bush v. Gore* held that a State violates equal protection when it fails to have uniform standards for the recounting of votes during a statewide election contest. *Bush v. Gore*, 531 U.S. 98, 109 (2000). Hollins has implemented a form of voting that is unique to Harris County and differs from the remaining 253 counties in the state of Texas. (ROA.1276)

## V. The Motions Panel Decision Does Not Bind the Merits Panel.

For multiple reasons as explained by the Ninth Circuit in litigation against President Trump, a decision by a motions panel does not bind a merits panel in the same case. "At least four other circuits have agreed that later panels may review the merits of a case 'uninhibited' by a motions panel's earlier decision in the same

case." *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1262 (9th Cir. 2020). Decisions by motions panels are typically without the full briefing and rights of petitioning for reconsideration which are attendant to a merits panel, which further weighs against allowing a motions panel to bind a merits panel. *See id.* at 1263-64. Shorter word-count limits on the submissions to a motions panel, and the lack of any oral argument, also militate against any binding effect by its decision on a merits panel. "We have stated before that a motions panel decision is not binding precedent." *Northshore Dev., Inc. v. Lee*, 835 F.2d 580, 583 (5th Cir. 1988) (citing multiple authorities).

Here, the motions panel issued a mere one-sentence decision denying relief, without providing a reason. (ROA.1437, per curiam decision by Stewart, Graves, and Higginson, JJ.) The motions panel order did not state whether it was based on standing or some other rationale. This decision by the motions panel has no binding effect on this merits panel.

## CONCLUSION

Plaintiffs-Appellants respectfully request that this Court reverse the order below which found a lack of standing by Plaintiffs to challenge drive-thru voting, and issue an order prohibiting use of drive-thru voting in future elections in Texas under current law.

Dated: January 11, 2021       Respectfully submitted,

/s/ Andrew L. Schlafly
Andrew L. Schlafly
939 Old Chester Road
Far Hills, New Jersey 07931
Tel: 908-719-8608
Fax: 908-934-9207
Email: aschlafly@aol.com

Jared Woodfill
Woodfill Law Firm, P.C.
3 Riverway Suite 750
Houston, Texas 77056
713-751-3080

*Attorneys for Appellants-Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, thereby providing service on all parties. I certify that all participants in the case are registered CM/ECF users.

s/ Andrew L. Schlafly

Attorney for Appellants

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements pursuant to Fed. R. App. P. 32(a):

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   this brief contains 8,127 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated: January 11, 2021

s/ Andrew L. Schlafly

Attorney for Appellants
